NORTH CAROLINA

ALAMANCE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
File No.: 16CVS1930

STEPHEN DOUGLAS SHOFFNER, NANCY G.
SHOFFNER, SHOFFNER PROPERTIES, LLC,
SHOFFNER HOLDINGS, LLC, and KELLI
SHOFFNER HARRELL,

        Plaintiffs,

v.

L. W. PRITCHETT, JR., INC.; CHEVRON
U.S.A. INC.; BP PRODUCTS NORTH
AMERICA INC.; and JAMES HUNT
JOHNSON, ADMINISTRATOR OF THE
ESTATE OF REBECCA STEEDLY
FAIRCLOTH,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**VERIFIED COMPLAINT**
(Jury Demand)

NOW COME Plaintiffs, Stephen Douglas Shoffner, Nancy G. Shoffner, Shoffner
Properties, LLC, Shoffner Holdings, LLC, and Kelli Shoffner Harrell, by and through
undersigned counsel, complaining of the Defendants, and hereby allege and say as follows:

## NATURE OF THE CASE

1.      Plaintiffs are current and former owners of real property located on Friendship
Patterson Mill Road in Burlington, Alamance County, whose groundwater is contaminated with
petroleum contaminants, most notably Methyl tert-butyl ether ("MTBE"). The contamination is
the result of gasoline released from the near-by former retail gasoline facility, Faircloth Grocery.
Plaintiffs allege that the defendants' acts and omissions collectively contributed to the
contamination of their groundwater, which has resulted in the water being unfit for household
use without special filtration and in the diminution in value of their properties.

## PARTIES

2.      Plaintiff Stephen Douglas Shoffner ("Douglas") is a citizen and resident of
Burlington, Alamance County, North Carolina.

3.      Plaintiff Nancy G. Shoffner ("Nancy") is a citizen and resident of Burlington,
Alamance County, North Carolina.

4.     Plaintiff Shoffner Properties, LLC, is a North Carolina limited liability company with the capacity to bring suit.

5.     Plaintiff Shoffner Holdings, LLC, is a North Carolina limited liability company with the capacity to bring suit.

6.     Plaintiffs Stephen Douglas Shoffner, Nancy G. Shoffner, Shoffner Properties, LLC, and Shoffner Holdings, LLC, will be collectively referred to herein as the "Shoffner Plaintiffs."

7.     Plaintiff Kelli Shoffner Harrell ("Kelli") is a citizen and resident of Burlington, Alamance County, North Carolina.

8.     Defendant L. W. Pritchett, Jr., Inc., ("Pritchett") is a North Carolina Corporation, with its principal office located at 207 Eastwood Court, Burlington, NC 27215. Defendant Pritchett has the capacity to be sued.

9.     Defendant Chevron U.S.A. Inc., ("Chevron") is a Pennsylvania Corporation authorized by the North Carolina Secretary of State to conduct business in North Carolina. Its Registered Office is located at 327 Hillsborough Street in Raleigh, Wake County, North Carolina. Defendant Chevron has the capacity to be sued.

10.     Defendant BP Products North America Inc., ("BP") is a Maryland Corporation authorized by the North Carolina Secretary of State to conduct business in North Carolina. Its Registered Office is located at 150 Fayetteville Street in Raleigh, Wake County, North Carolina. Defendant BP has the capacity to be sued.

11.     James Hunt Johnson is a resident of Alamance County, North Carolina, and is the Administrator of the Estate Rebecca Steedly Faircloth ("Faircloth Estate"). Prior to her death, the decedent, Rebecca Steedly Faircloth was a citizen and resident of Alamance County, North Carolina, and her estate is being administrated in Alamance County. The Faircloth Estate has the capacity to be sued. All liability alleged unto the decedent, Rebecca Steedly Faircloth, is also the liability of the Estate.

## JURISDICTION AND VENUE

12.     The Superior Court of the General Court of Justice has jurisdiction over this matter pursuant to N.C. Gen. Stat. §§ 7A-240 and 7A-243.

13.     Venue lies in Alamance County, North Carolina, pursuant to N.C. Gen. Stat. §§ 1-79 and 1-82, in that a substantial portion of the acts, events and omissions giving rise to the Plaintiffs' claims occurred in this County, the Plaintiffs reside and own property in this County, the Defendants operated and conducted business in this County, and the Properties which are the subject of this action are located in this County.

Case 1:16-cv-01354-CCE-JEP   Document 6   Filed 11/22/16   Page 2 of 19

14.     The State of North Carolina has personal jurisdiction over Defendant Pritchett, pursuant to N.C. Gen. Stat. § 1-75.4(1)(c), as it is a domestic corporation.

15.     The State of North Carolina has personal jurisdiction over Defendants Chevron and BP, pursuant to N.C. Gen. Stat. § 1-75.4(1)(d), as these defendants are engaged in substantial activities within North Carolina.

16.     The State of North Carolina has personal jurisdiction over the Faircloth Estate, pursuant to N.C. Gen. Stat. § 1-75.4(11), as the State would have has a basis for jurisdiction over Rebecca Steedly Faircloth, were she living.

## FACTUAL ALLEGATIONS

17.     The allegations contained within the above paragraphs are incorporated by reference as if fully set forth herein.

18.     From the period beginning in March of 2007 until December of 2015, Plaintiffs Stephen Douglas Shoffner and Nancy G. Shoffner were the owners of real property located at 4855 Friendship Patterson Mill Road in Burlington, Alamance County, North Carolina (hereinafter "4855") and being further identified as PIN 8861239384.

19.     In December of 2015, Plaintiffs Douglas and Nancy transferred the title to 4855 to their family's limited liability company, Plaintiff Shoffner Holdings.

20.     Plaintiffs Douglas and Nancy reside at 4855. There is a groundwater supply well located at 4855, which is intended and used for household use, such as drinking, bathing, cooking, laundry and dishwashing.

21.     From the period beginning in October of 2003 until December 2015, Plaintiff Shoffner Properties has been the owner of real property located at 4903 Friendship Patterson Mill Road in Burlington, Alamance County, North Carolina (hereinafter "4903") and being further identified as PIN 8861334304.

22.     Since December of 2015, Plaintiff Shoffner Holdings has been the owner of 4903.

23.     Plaintiffs Douglas and Nancy, by and through Plaintiff Shoffner Holdings, maintain 4903 as an income property. There is a groundwater supply well located at 4903, which is intended and used for household use, such as drinking, bathing, cooking, laundry and dishwashing.

24.     Plaintiff Kelli Harrell is the owner of real property located at 4917 Friendship Patterson Mill Road in Burlington, Alamance County, North Carolina (hereinafter "4917") and being further identified as PIN 8861333160.

Case 1:16-cv-01354-CCE-JEP   Document 6   Filed 11/22/16   Page 3 of 19

25.     Kelli built 4917 to be her primary residence. She resides there with her minor son. There is a groundwater supply well located at 4917, which is intended and used for household use, such as drinking, bathing, cooking, laundry and dishwashing.

26.     Plaintiffs are informed and believe that, at all times relevant, the late Rebecca Steedly Faircloth and her husband, the late Eulie Faircloth ("the Faircloths"), owned, occupied and/or operated the certain real property located on the northwest corner of the intersection of N.C. Highway 49 and Friendship Patterson Mill Road in Burlington, Alamance County, North Carolina ("Faircloth Grocery Facility"), upon which was located a convenience store and retail gasoline facility known as "Faircloth Grocery" for the sale of grocery items, gasoline and other petroleum products (hereafter "the Faircloth Grocery Facility").

27.     Plaintiffs are informed and believe that, upon Eulie's death in February of 2011, Rebecca became the sole owner of the Faircloth Grocery Facility. Rebecca passed away on April 10, 2016.

28.     Plaintiffs are informed and believe that, at all times relevant, Defendant Pritchett was engaged in business in North Carolina as a petroleum marketer or "jobber" wherein it purchased quantities of gasoline from refining companies and resold the gasoline to the general public. As part of this business, Defendant Pritchett supplied the gasoline to consignment dealers and retail gasoline facilities (including the Faircloth Grocery Facility) and owned the petroleum marketing equipment, including the equipment used to store and dispense gasoline at the Faircloth Grocery Facility.

29.     Upon information and belief, prior to 1985, Defendant Pritchett purchased and resold gasoline from the Gulf Oil Corporation.

30.     Upon information and belief, in or about August of 1985, Defendant Chevron acquired the Gulf Oil Corporation, and until in or about 1989, Defendant Pritchett purchased and resold gasoline from the Gulf Oil Corporation. (Hereinafter, "Defendant Chevron" will collectively refer to Defendant Chevron and its predecessor entities described herein.)

31.     Upon information and belief, then in or about 1989, Defendant Pritchett began purchasing and reselling gasoline refined by BP Oil Company, which continued until the early 2000s. Upon information and belief, Defendant BP Products North America Inc., is the successor to BP Oil Company. (Hereinafter, "Defendant BP" will collectively refer to Defendant BP and its predecessor entities described herein.)

32.     Upon information and belief, at all times relevant, Defendant Pritchett operated, maintained, and exercised the right of control over the gasoline storage and dispensing equipment at the Faircloth Grocery Facility.

33.     In addition to or in the alternative to the immediately preceding paragraph, upon information and belief, during all times relevant, the Faircloths operated, maintained, and exercised the right of control over the gasoline storage and dispensing equipment at the Faircloth Grocery Facility.

34. Upon information and belief, at all times relevant, Defendant Pritchett was responsible for overseeing, managing, inspecting, monitoring and otherwise maintaining the contents and condition of the gasoline storage and dispensing equipment at the Faircloth Grocery Facility.

35. In addition to or in the alternative to the immediately preceding paragraph, upon information and belief, during all times relevant, the Faircloths were responsible for overseeing, managing, inspecting, monitoring and otherwise maintaining the contents and condition of the gasoline storage and dispensing equipment at the Faircloth Grocery Facility.

36. Upon information and belief, at all times relevant, Defendant Pritchett was the owner or bailee of the gasoline and petroleum products stored at the Faircloth Grocery Facility and dispensed through the gasoline pumps for sale to the public.

37. In addition to or in the alternative to the immediately preceding paragraph, upon information and belief, during all times relevant, the Faircloths were the owners or bailees of the gasoline and petroleum products at the Faircloth Grocery Facility and dispensed through the gasoline pumps for sale to the public.

38. Upon information and belief, at all times relevant, Defendant Pritchett was responsible for contracting for, receiving, handling, storing, seeing to payment for, and otherwise managing the receipt and sale of gasoline and petroleum products at the Faircloth Grocery Facility.

39. In addition to or in the alternative to the immediately preceding paragraph, upon information and belief, during all times relevant, the Faircloths were responsible for contracting for, receiving, handling, storing, seeing to payment for, and otherwise managing the receipt and sale of gasoline and petroleum products at the Faircloth Grocery Facility.

40. In November of 1984, Defendant Pritchett hired the Southern Oil and Tank Company to remove three 1,000-gallon underground storage tanks (USTs) used to store gasoline at the Faircloth Grocery Facility. The Southern Oil and Tank Company failed to document the condition of the tanks and the adjoining soil upon removal.

41. In or about May of 1984, Defendant Pritchett had four USTs installed at Faircloth Grocery, including two 8,000-gallon gasoline USTs, one 4,000-gallon gasoline UST, and one 2,000-gallon diesel fuel UST.

42. Then on August 26, 1989, Defendant Pritchett hired G & H Oil Equipment, Inc., to remove a 550-gallon kerosene tank from the Faircloth Grocery Facility (near the northeast corner of the building). Defendant Pritchett was the owner the kerosene tank. In a letter dated September 21, 1989, and addressed to the North Carolina Department of Natural Resources and Community Development (the North Carolina Department of Natural Resources and Community Development and its successors, the North Carolina Department of Environment, Health, and Natural Resources, the North Carolina Department of Environment and Natural Resources, and

Case 1:16-cv-01354-CCE-JEP   Document 6   Filed 11/22/16   Page 5 of 19

the current entity, the North Carolina Department of Environmental Quality, will be collectively referred to herein as the "Department") William V. Hill, Vice President of G & H noted that, upon removal, the "[t]ank was found to have perforations and site soil contamination was suspected . . . A soil sample was taken to Guilford Laboratories for total petroleum hydrocarbon analysis. Results indicate 2040 p.p.m." A true and accurate copy of this correspondence is attached hereto as **Exhibit A**.

43.     On November 28, 1989, the Department's Division of Environmental Management, Groundwater Section, issued a "Notification of Federal Release Response Requirements for Owners and Operators of Underground Storage Tank Systems Containing Petroleum or Hazardous Substances" to Defendant Pritchett, which required Pritchett to determine the extent of the contamination by March 28, 1990. Defendant Pritchett failed to comply with this requirement and its obligations pursuant to Part 280 of Title 40 of the Code of Federal Regulations. A true and accurate copy of this correspondence is attached hereto as **Exhibit B**.

44.     Upon information and belief, low levels of MTBE contamination were detected in the area of Faircloth Grocery as early as July of 1990. MTBE is a constituent that is sometimes added to gasoline, but not to kerosene.

45.     On December 20, 1991, the the Department's Division of Environmental Management, Groundwater Section sent notice to Defendant Pritchett that it had "become aware of groundwater contamination existing within a residential drinking water supply well . . . located in close proximity to [Faircloth Grocery]. The contamination is believed to have resulted from a release of a petroleum product into the groundwater." The Department identified Faircloth Grocery as the suspected source of the contamination and strongly recommended that Defendant Pritchett perform a site check to evaluate "whether there has been a release from existing or previously existing USTs." A true and accurate copy of this correspondence is attached hereto as **Exhibit C**. Once again, Defendant Pritchett failed to take action to determine the source and extent of the contamination.

46.     On April 16, 1992, the Department's Groundwater Section issued a Notice of Violation to Pritchett and Eulie Faircloth for violation of North Carolina's groundwater quality standards, identifying them as the parties responsible for the groundwater contamination at Faircloth Grocery. The Department's Groundwater Section further tasked Pritchett and the Faircloths with "eliminating the source of the contamination and restoring groundwater quality." A true and accurate copy of this correspondence is attached hereto as **Exhibit D**.

47.     On November 9, 1992, Defendant Pritchett submitted an application for Leaking Petroleum Underground Storage Tank Cleanup Funds to the Department. The application indicates that evidence of a petroleum release was discovered on March 11, 1992. A true and accurate copy of this correspondence is attached hereto as **Exhibit E**.

48.     On November 13, 1992, the Department's Groundwater Section issued a second Notice of Violation to Pritchett for failing to "conduct and/or report the investigation for soil and ground-water clean-up" and failing to "submit a Corrective Action Plan that provides adequate

Case 1:16-cv-01354-CCE-JEP   Document 6   Filed 11/22/16   Page 6 of 19

protection of human health and the environment . . ." A true and accurate copy of this correspondence is attached hereto as **Exhibit F**.

49.    An internal Department memorandum dated November 20, 1992, proposes that the petroleum leak allegedly discovered by Defendant Pritchett in 1992 could have been discovered sooner, had Defendant Pritchett complied with the notices sent by the Department on November 28, 1989, and December 20, 1991. A true and accurate copy of this correspondence is attached hereto as **Exhibit G.**

50.    In August of 1993, nearly three years after the Department originally tasked Defendant Pritchett with investigating contamination at the Faircloth Grocery Facility, the UST product lines at the Faircloth Grocery Facility were deemed to be the source of the leak and were excavated and removed, and new product lines were installed.

51.    Since in or about 1993, Defendant Pritchett, as the party deemed responsible for the contamination by the Department, has attempted to remediate and/or has monitored the groundwater contamination at and around Faircloth Grocery through its environmental consultants; however, groundwater contamination continues to persist in excess of the applicable State and Federal standards.

52.    In or about August of 1993, the Department began monitoring the Shoffner Plaintiff's water supply wells at 4855 and 4903 for petroleum contamination. Since that time, the Shoffner Plaintiff's water supply wells at 4855 and 4903 have recurrently evidenced petroleum contaminants, including but not limited to MTBE.

53.    The petroleum contamination resulting from the above-described releases at Faircloth Grocery is undoubtedly the source of the contamination in the Shoffner water supply wells.

54.    As a result of the petroleum contamination in the water supply wells at 4855 and 4903, the Shoffner Plaintiffs have suffered damages, including but not limited to the loss of use and enjoyment of their groundwater, costs related to maintaining point-of-entry filtration systems on the well for both properties, and diminution in the value of said properties due of the stigma of the water supply contamination.

55.    The Shoffner Plaintiff's claims constitute claims for groundwater contamination within the purview of North Carolina General Statute § 130A-26.3, and thus the 10-year statute of repose set forth in North Carolina General Statute § 1-52(16) is not applicable to said claims. This Verified Complaint is timely filed within all applicable statutes of limitation and repose.

56.    Plaintiff Kelli Harrell constructed her residence at 4917 in 2013. Because municipal water is not available in the area, Ms. Harrell applied to Alamance County for a well permit. Alamance County's well permits section approved the construction of Ms. Harrell's water supply well.

Case 1:16-cv-01354-CCE-JEP  Document 6  Filed 11/22/16  Page 7 of 19

57.     On October 24, 2013, Alamance County collected water samples from Ms. Harrell's well for analysis and the N.C. State Laboratory of Public Health analyzed the water samples.

58.     The analyses of the October 2013 water samples from the Harrell supply well showed a detection of 28 micrograms per liter (µg/L) of Methyl Tertiary Butyl Ether (MTBE), in excess of North Carolina's 2L groundwater standard.

59.     In or about December of 2013, Ms. Harrell was notified of the MTBE contamination and was advised to discontinue drinking her well water and to limit showering and bathing.

60.     North Carolina Division of Health's Toxicologist Kenneth Rudo warned Ms. Harrell that inhaling vapors from MTBE-contaminated water during showering or bathing could be just as hazardous as drinking the contaminated water.

61.     On December 12, 2013, Ms. Harrell met with Pyramid Environmental, environmental consultant for Defendant Pritchett. Pyramid offered to supply Ms. Harrell with bottled water but did not offer a solution to the issue of exposure to MTBE through other household water use such as bathing.

62.     Fearing for the health of her son and for her own well-being, Ms. Harrell installed a point-of-entry filtration system on her water supply well to treat the water supply before it enters her home.

63.     The petroleum contamination resulting from the above-described releases at Faircloth Grocery is undoubtedly the source of the contamination in the Harrell water supply well.

64.     As a result of the petroleum contamination in Ms. Harrell's water supply well she has suffered damages, including but not limited to the loss of use and enjoyment of her groundwater, costs related to maintaining point-of-entry filtration systems on her well, and diminution in the value of her property due to the stigma of the water supply contamination.

65.     Kelli Harrell's claims constitute claims for groundwater contamination within the purview of North Carolina General Statute § 130A-26.3, and thus the 10-year statute of repose set forth in North Carolina General Statute § 1-52(16) is not applicable to said claims. This Verified Complaint is timely filed within all applicable statutes of limitation and repose.

66.     Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) failed to exercise the standard of care required of facilities that market and distribute petroleum products and failed to properly manage the USTs and associated piping located at the Faircloth Grocery Facility during the periods when these defendants owned, controlled, and managed the Faircloth Grocery Facility.

Case 1:16-cv-01354-CCE-JEP   Document 6   Filed 11/22/16   Page 8 of 19

67.     Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) knew or should have known that gasoline stored in the USTs were unaccounted for, which indicated the USTs or associated piping were losing, leaking, discharging and releasing contaminants into the environment, including the soils, sub-surfaces and groundwater.

68.     Despite notice and knowledge that the USTs or associated piping at the Faircloth Grocery Facility were leaking, discharging and releasing gasoline into the environment, including the soils, sub-surfaces and groundwater, Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) wrongfully and unlawfully:

    a.  Failed to document these losses, leaks, discharges, releases or spills;

    b.  Failed to appropriately and timely report these findings to the appropriate State and Federal agencies;

    c.  Failed to notify and/or warn area residents of the findings and contamination;

    d.  Continued to use the gasoline storage and dispensing equipment to store and dispense gasoline, including delivering gasoline to the compromised equipment;

    e.  Failed to take any action to contain, clean up or mitigate the presence and spread of contamination;

    f.  Failed to properly investigate the cause of the losses, leaks, discharges, releases and spills; and

    g.  Failed to properly investigate the extent of the subsurface soils and groundwater affected by such contamination.

69.     Plaintiffs are informed and believe that these discharges and releases of contaminants were allowed by Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) to continue over a period of years.

70.     Following the discovery of contamination, tests of the groundwater soils and sub-surfaces at the Faircloth Grocery Facility revealed the presence of gasoline contamination. These contaminants found in the groundwater exceeded the quality standards established in Subchapter 2L, Title 15A of the North Carolina Administrative Code.

71.     Despite the discovery of petroleum hydrocarbon contaminants in the soils, sub-surfaces and groundwater, Defendants Pritchett and Rebecca Faircloth (Faircloth Estate):

    a.  Failed to notify any of the area residents, including the Plaintiffs, of such findings;

    b.  Failed to appropriately and timely report such findings to the appropriate state and federal agencies;

c. Failed to take appropriate action to contain, clean up or mitigate the presence and spread of the contaminants;

d. Failed to properly investigate the cause of the discharges, releases, leaks or spills resulting in the foregoing contamination; and

e. Failed to properly investigate the extent to which sub-surfaces, soils and groundwater were affected by such contamination.

72. As a result of these leaks, discharges, releases or spills of contaminants from the Faircloth Grocery Facility, the subsurface soils and groundwater at and near the Faircloth Grocery Facility premises have been contaminated, including Plaintiffs' properties.

73. Since at least 1989, Defendant Pritchett and the Faircloths knew that the subsurface soils and groundwater, both at and near the Faircloth Grocery Facility premises, have been and were contaminated by gasoline contaminants, which had been discharged or released from the Faircloth Grocery Facility.

74. Throughout the operation of the Faircloth Grocery Facility, Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) knew or should have known that such contaminants were being and had been discharged, released and emitted from the Faircloth Grocery Facility, thereby contaminating the subsurface soils and groundwater at and near the Faircloth Grocery Facility premises.

75. At all times relevant, Defendants Chevron and BP refined petroleum into gasoline marketed and sold to petroleum marketers, including Defendant Pritchett, and also to the consuming public, including the citizens of North Carolina.

76. Given the timing of the discovery of the petroleum contamination at the Faircloth Grocery Facility, the gasoline contaminating the Plaintiffs' groundwater was refined by either Defendant Chevron or Defendant BP, or a combination of the two.

77. The act of utilizing USTs for the storage and dispensing of petroleum is inherently high-risk. Contamination from leaking underground storage tanks is common in North Carolina. Since 1985, there have been more than 19,000 reported discharges from underground storage tanks State-wide. There are approximately 5,000 sites across the State impacted by leaking underground storage tanks. When an underground storage tanks leak, a variety of contaminants, some carcinogenic, are introduced into the soil and groundwater. Many of these contaminants, including MTBE, are hazardous to health if ingested or inhaled.

78. The exercise of due care and diligent monitoring can eliminate or greatly mitigate the attendant risk of using USTs.

79. Defendants Chevron and BP knew or should have known that the gasoline they sold to Defendant Pritchett would be stored in and dispensed from USTs prior to sale to

Case 1:16-cv-01354-CCE-JEP Document 6 Filed 11/22/16 Page 10 of 19

consumers, and that this arrangement carried a high probability that a release of gasoline and resultant groundwater contamination would occur in the absence of due diligence and due care.

80.     Defendants Chevron and BP, as the refiners and sellers of gasoline, have a non-delegable duty for the safety of others, including Plaintiffs.

81.     Defendants Chevron and BP, each a multibillion dollar, multination corporation in its own right, are well-positioned to mitigate the harm of gasoline contamination by suspending gasoline sales to jobbers that fail to comply with state and federal safety regulations, including failing to investigate suspected releases.

82.     The Department's UST facility compliance records, including those for the Faircloth Grocery Facility, are (and were at all times relevant) public record. As early as 1989, Defendants Chevron and BP knew or should have known that the gasoline storage and dispensing equipment at Faircloth Grocery Facility was compromised. In light of this knowledge, Defendants Chevron and BP had a duty to refuse to supply the Faircloth Grocery Facility with gasoline until the integrity of the gasoline storage and dispensing equipment could be confirmed.

83.     By selling gasoline to Defendant Pritchett while and with knowledge that the gasoline storage and dispensing equipment at Faircloth Grocery Facility was compromised, Defendants Chevron and BP breached their duty to the general public, including Plaintiffs, and were complicit in contributing to the contamination of Plaintiffs' groundwater.

84.     Each of the above-described wrongful actions of Defendants concurred to produce and cause the entirety of the injuries and damages of Plaintiffs described herein, which injuries and damages are indivisible. Therefore, Defendants are jointly and severally liable to Plaintiffs for the injuries and damages described herein, and each Defendant is liable to Plaintiffs for the entirety of Plaintiffs' injuries and damages. In the alternative, and as the evidence dictates, the wrongful acts of an individual Defendant, or some combination of Defendants, caused the entirety of Plaintiffs' injuries and damages described herein.

PLAINTIFF HARRELL'S CAUSES OF ACTION

**PLAINTIFF HARRELL'S FIRST CAUSE OF ACTION**
**Violation of North Carolina Oil Pollution and Hazardous Substances Control Act, N.C.**
**Gen. Stat. § 143.215.75, *et seq.*, as to Defendants Pritchett and the Faircloth Estate**

85.     The allegations contained within the above paragraphs are incorporated by reference as if fully set forth herein.

86.     Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) were at all times material hereto persons having control over oil or other hazardous substances, as defined in North Carolina General Statutes § 143-215.77(5) and (13), for purposes of the Oil Pollution and Hazardous Substances Control Act (OPHSCA), N.C. Gen. Stat. § 143.215.75, *et seq.*, by virtue of, immediately prior to a discharge of gasoline or other oils:

Case 1:16-cv-01354-CCE-JEP   Document 6   Filed 11/22/16   Page 11 of 19

a. Owning the USTs containing the chemicals, the Facility on which those USTs were located, and their ownership or bailment of the chemicals stored in those tanks;

b. Storing chemicals in the USTs;

c. Transporting or transferring, or causing to be transported or transferred, the chemicals to such USTs.

87. The chemicals referred to herein, including gasoline, are "oil" as defined in OPHSCA, N.C. Gen. Stat. § 143.215.77(8).

88. The underground water supply of Plaintiffs and all streams or other bodies or accumulations of water connected with or adjacent to said water supply are "water" as defined in OPHSCA, N.C. Gen. Stat. § 143.215.77(18).

89. Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) violated OPHSCA by:

a. Unlawfully discharging oil or other hazardous substances into the waters of the State (N.C. Gen. Stat. § 143-215.83);

b. Failing to immediately collect and remove the discharge of oil or other hazardous substances (N.C. Gen. Stat. § 143-215.84(a)and 143-215.94(E)(a)); and

c. Failing to immediately notify officials of the discharge (N.C. Gen. Stat. § 143-215.85 and 143-215.94(E)(a)).

90. Under OPHSCA, N.C. Gen. Stat. § 143-215.93, Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) are strictly liable, without regard for fault, for all damages to persons and properties of Plaintiffs caused by the entry of oil or other hazardous substances from the Faircloth Grocery Facility into their water supply and real properties.

91. Defendants Pritchett and Rebecca Faircloth (Faircloth Estate)'s violation of N.C. Gen. Stat. § 143-215.93 constitutes both nuisance and trespass by the entry of oil or other hazardous substances from the Faircloth Grocery Facility into the Plaintiff's water supply and real properties.

92. As a direct and proximate result of these violations of OPHSCA by Defendants Pritchett and Rebecca Faircloth (Faircloth Estate), Plaintiff Harrell suffered damages as described more fully herein, among other damages to be proved through discovery and at trial.

## PLAINTIFF HARRELL'S SECOND CAUSE OF ACTION
### Negligence at to all Defendants

93.     The allegations contained within the above paragraphs are incorporated by reference as if fully set forth herein.

94.     Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) were negligent in allowing gasoline to spill, discharge, escape, or be released from the USTs located on the Faircloth Grocery Facility, and to contaminate Plaintiff Harrell's water supply well and to travel to the property owned and occupied by Plaintiff Harrell.  Specifically, Defendants Pritchett and Rebecca Faircloth (Faircloth Estate):

   a.  Failed to take reasonable and adequate precautions in operating the Faircloth Grocery Facility to avoid the release gasoline into the ground, soils, sub-surfaces and groundwater within and outside the Faircloth Grocery Facility premises;

   b.  Failed to take reasonable and adequate remedial measures to clean up such contamination on the ground and in the soils, sub-surfaces and groundwater within and outside the Faircloth Grocery Facility premises so as to prevent adjoining properties, including the Plaintiffs' properties, from becoming contaminated;

   c.  Failed to timely and adequately test for the presence of hazardous chemical substances within and outside the Faircloth Grocery Facility premises and on adjacent properties, including the Plaintiffs' properties;

   d.  Failed to warn the Plaintiffs of the hazards of contaminated soils, sub-surfaces and groundwater despite having actual or constructive knowledge of such contamination since at least 1991; and

   e.  Were negligent in other ways which may be shown through discovery.

95.     Defendants Chevron and BP were negligent in selling gasoline to Defendant Pritchett and the Faircloth Grocery Facility despite having actual or constructive knowledge that the gasoline storage and dispensing equipment at Faircloth Grocery Facility was compromised and leaking gasoline into the ground, soils, sub-surfaces and groundwater within and outside the Faircloth Grocery Facility premises.

96.     As a direct and proximate result of this negligence of the Defendants, Plaintiff Harrell suffered damages as described more fully herein, among other damages to be proved through discovery and at trial.

Case 1:16-cv-01354-CCE-JEP   Document 6   Filed 11/22/16   Page 13 of 19

## PLAINTIFF HARRELL'S THIRD CAUSE OF ACTION
### Negligence *Per Se* as to Defendants Pritchett and Rebecca Faircloth (Faircloth Estate)

97.     The allegations contained within the above paragraphs are incorporated by reference as if fully set forth herein.

98.     The acts and omissions of Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) complained of herein are governed by statutes, laws, and regulations, and are in violation of these statutes, laws, and regulations.

99.     These statutes, laws, and regulations were enacted to prevent the type of harm complained of herein, and Plaintiff Harrell is within the class of persons the statutes, laws, and regulations were enacted to protect.

100.    The statutes, laws and regulations which were violated by Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) include, among others, the following:

   a. Section 143-215.83 of the North Carolina Oil Pollution & Hazardous Substances Control Act, for discharging, or causing to be discharged, oil or other hazardous substances into the groundwater which caused damage to persons or property;

   b. Section 143-215.84(a) of the North Carolina Oil Pollution & Hazardous Substances Control Act, for failing to immediately collect and remove the discharge of oil or other hazardous substances;

   c. Section 143-215.85 of the North Carolina Oil Pollution & Hazardous Substances Control Act, for failing to immediately notify officials of their discharge of oil or other hazardous substances into the groundwater;

   d. Section 143-215.94E of the North Carolina Oil Pollution & Hazardous Substances Control Act, for failing to immediately collect and remove the discharge of oil or other hazardous substances, and failing to immediately notify officials of their discharge; and

   e. Subchapter 2L of Title 15A of the North Carolina Administrative Code, for causing the groundwater at the Facility and surrounding areas to exceed the applicable water quality standards.

101.    These wrongful and unlawful acts and omissions of Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) were the proximate cause of the injuries and damages to the Plaintiffs and the Plaintiffs' property as alleged herein and such injuries and damages were reasonably foreseeable.

102.    As a direct and proximate result of this negligence *per se* of the Defendants Pritchett and Rebecca Faircloth (Faircloth Estate), Plaintiff Harrell suffered damages as described more fully herein, among other damages to be proved through discovery and at trial.

Case 1:16-cv-01354-CCE-JEP   Document 6   Filed 11/22/16   Page 14 of 19

## PLAINTIFF HARRELL'S FOURTH CAUSE OF ACTION
### *Res Ipsa Loquitur* as to Defendants Pritchett and Rebecca Faircloth (Faircloth Estate)

103.    The allegations contained within the above paragraphs are incorporated by reference as if fully set forth herein.

104.    At all times relevant hereto, Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) maintained exclusive control of the USTs and the Faircloth Grocery Facility.

105.    The spill, discharge, release or escape of gasoline or other petroleum hydrocarbons and related chemicals from the Faircloth Grocery Facility occurred from the negligence, gross negligence, reckless or wanton misconduct of the Defendants Pritchett and Rebecca Faircloth (Faircloth Estate).

106.    Such wrongful and unlawful acts and omissions of the Defendants Pritchett and Rebecca Faircloth (Faircloth Estate) were the proximate cause of the injuries and damages suffered by Plaintiff Harrell and Plaintiff Harrell's property as alleged herein and such damages were reasonably foreseeable.

107.    Pursuant to the doctrine of *Res Ipsa Loquitur,* as a direct and proximate result of the wrongful acts and omissions of the Defendants Pritchett and Rebecca Faircloth (Faircloth Estate), Plaintiff Harrell suffered damages as described more fully herein, among other damages to be proved through discovery and at trial.

## ALL PLAINTIFFS' CAUSES OF ACTION

### FIFTH CAUSE OF ACTION
### Nuisance as to all Defendants

108.    The allegations contained within the above paragraphs are incorporated by reference as if fully set forth herein.

109.    Plaintiffs' groundwater has been recurrently contaminated by the aforementioned discharges, releases and emissions of hazardous chemical substances from the Faircloth Grocery Facility.

110.    The contamination of the Plaintiffs' groundwater with hazardous chemical substances constitutes an unreasonable and substantial invasion of the Plaintiffs' use and enjoyment of their properties in that they can no longer use and enjoy their properties and groundwater for the same purposes and to the same extent as they could prior to the contamination caused by the Defendants.  Therefore, the contamination constitutes a permanent nuisance, which has resulted in the injuries and damages to the Plaintiffs and the Plaintiffs' properties described herein.

Case 1:16-cv-01354-CCE-JEP   Document 6   Filed 11/22/16   Page 15 of 19

111.    As a direct and proximate result of the nuisance maintained by the Defendants, Plaintiffs have suffered damages as described more fully herein, among other damages to be proved through discovery and at trial.

## SIXTH CAUSE OF ACTION - PRITCHETT & THE FAIRCLOTH ESTATE
### Trespass as to all Defendants

112.    The allegations contained within the above paragraphs are incorporated by reference as if fully set forth herein.

113.    Plaintiffs' groundwater has been recurrently contaminated by the aforementioned discharges, releases and emissions of hazardous chemical substances from the Faircloth Grocery Facility.

114.    The contamination of the Plaintiffs' properties with hazardous chemical substances from the Faircloth Grocery Facility constitutes unauthorized and therefore unlawful entries on the Plaintiffs' properties, that is, such contamination amounts to renewing trespasses on the Plaintiffs' properties by the Defendants, which has resulted in the injuries and damages to the Plaintiffs and the Plaintiffs' properties an alleged herein.

115.    As a direct and proximate result of the Defendants' trespass, Plaintiffs have suffered damages as described more fully herein, among other damages to be proved through discovery and at trial.

## DAMAGES

116.    The allegations contained within the above paragraphs are incorporated by reference as if fully set forth herein

117.    As a result of the acts and omissions of the Defendants and the resulting injuries to their properties caused thereby, Plaintiffs, have each sustained damages in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), which damages may include, but are not limited to, the following:

a.  Diminution in value of Plaintiffs' properties;

b.  Costs associated with the cleanup of Plaintiffs' properties and restoring them to a condition free of contamination; and

c.  Past and future out of pocket expenses for filtering their groundwater for personal use.

Case 1:16-cv-01354-CCE-JEP   Document 6   Filed 11/22/16   Page 16 of 19

WHEREFORE, Plaintiffs respectfully pray the Court that:

1.    Plaintiffs have and recover compensatory damages from Defendants, jointly and severally, in an amount in excess of $25,000.00, said amount to be proven at the trial of this action;

2.    Plaintiffs have and recover of Defendants pre- and post- judgment interest as allowed by law;

3.    The costs of this action be taxed against Defendants;

4.    That the Court accept this Verified Complaint as an Affidavit;

5.    The Court grant to Plaintiffs trial by jury on all issues so triable; and

6.    The Court grant to Plaintiffs such other and further relief as it may deem just and proper.

Respectfully submitted, this the 21st day of October, 2016.

LAW OFFICES OF F. BRYAN BRICE, JR.

By: _E. Warren Kuhn_

E. Warren Kuhn
State Bar No. 42986
127 W. Hargett St., Ste. 600
Raleigh, NC 27601
Phone: (919) 754-1600
Fax: (919) 573-4252
*Attorney for Plaintiffs*

## VERIFICATION

I, Stephen Douglas Shoffner, being first duly sworn, deposes and says that he is a Plaintiff in the above-captioned matter; that he has read the foregoing Verified Complaint, and knows the contents thereof; that the same is true of his own knowledge except those matters and things stated therein upon information and belief, and as to those he believes them to be true.

This the _21_ day of October, 2016.

By: _____
Stephen Douglas Shoffner

NORTH CAROLINA

_Alamance_ COUNTY

Sworn to and subscribed before me this the _21_ day of October, 2016.

By: _____
Notary Public

My commission expires: _08/30/17_

[SEAL]

## VERIFICATION

I, Kelli Shoffner Harrell, being first duly sworn, deposes and says that she is a Plaintiff in the above-captioned matter; that she has read the foregoing Verified Complaint, and knows the contents thereof; that the same is true of her own knowledge except those matters and things stated therein upon information and belief, and as to those she believes them to be true.

This the 21st day of October, 2016.

By: _Kelli Shoffner Harrell_
Kelli Shoffner Harrell

NORTH CAROLINA

_WAKE_ COUNTY

Sworn to and subscribed before me this the 21 day of October, 2016.

By: _E. Warren Kuhn_
Notary Public

My commission expires: 3/6/2017

[SEAL]
E. WARREN KUHN
Notary Public
Wake County
My Commission Expires
03/06/2017
NORTH CAROLINA